IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SABAN S.**[1], <br><br>         Plaintiff, <br><br>    v. <br><br> **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br>         Defendant. | Case No. 3:20-cv-1549-SI <br><br> **OPINION AND ORDER** |

Sara L. Gabin, SARA L. GABIN PC, 14523 Westlake Drive, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Sarah Elizabeth Moum, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Saban S. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying his application for Disability Insurance

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court affirms the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on April 12, 2017, alleging disability beginning on February 23, 2015. AR 60. Plaintiff's date of birth is February 16, 1958, and he was 57 years old as of the

alleged disability onset date. AR 61. The agency denied his claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 122, 131, 134. Plaintiff appeared for a hearing before an ALJ in August 2019. AR 37. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 15-29. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous

PAGE 3 – OPINION AND ORDER

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

As a preliminary step for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2021. AR 17. The ALJ then proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 23, 2015. *Id.* At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of degenerative disc disease, history of aortic aneurysms, post-traumatic stress disorder (PTSD), and depression. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform: "medium work as defined in 20 CFR 404.1567(c) except can frequently climb ramps. stairs, ladders and scaffolds, can occasionally stoop, frequently kneel, occasionally crouch, crawl; should avoid concentrated exposure to airborne irritants such as dust, fumes, and gases; and limited to simple routine tasks." AR 20. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform any past relevant work. AR 28. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including hand packager, laundry laborer, and dryer attendant. AR 29. The ALJ thus concluded that Plaintiff was not disabled. *Id.*

# DISCUSSION

Plaintiff argues that the ALJ erred by failing to include Plaintiff's knee condition as a severe impairment at step two, rejecting his symptom testimony, rejecting the medical opinions of Drs. Neal Berner, Kim Webster, Brad Lorber, and John Kinzie, and finding that a significant number of jobs exist in the national economy that Plaintiff can perform. The Court addresses each alleged error in turn.

## A. Step Two Finding

Plaintiff argues the ALJ erred by failing to include Plaintiff's knee condition as a severe impairment at step two. The step two inquiry is a "*de minimus* screening device to dispose of groundless claims." *Yuckert*, 482 U.S. at 153-54. Omissions at step two are harmless error if step two is decided in the claimant's favor and the nonsevere conditions are considered by the ALJ. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). In *Buck*, the Ninth Circuit explained:

> Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Id.* at 1049. The Ninth Circuit then concluded that the plaintiff "could not possibly have been prejudiced" by an omission of a severe impairment at step two because the ALJ decided step in the plaintiff's favor. *Id.*

Here, the ALJ decided step two in Plaintiff's favor and discussed his knee condition in evaluating Plaintiff's claim. Thus, any error at step two is harmless. *See id.*

## B. Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

PAGE 7 – OPINION AND ORDER

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, one reason the ALJ provided for rejecting Plaintiff's symptom testimony is that several physicians noted Plaintiff consistently exhibited pain behavior, poor effort, and demonstrated inconsistent abilities during medical exams. Such evidence is a clear and

PAGE 8 – OPINION AND ORDER

convincing reason to reject the plaintiff's symptom testimony. *English v. Saul*, 840 F. App'x 241, 242 (9th Cir. 2021) ("[T]he ALJ [] provided clear and convincing reasons to discount English's testimony, including the fact that English had exhibited poor effort during neurological testing . . . ."); *Linden v. Berryhill*, 736 F. App'x 684, 685 (9th Cir. 2018) ("A tendency to exaggerate is a valid reason to discount a claimant's testimony."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (concluding that the ALJ did not err in discounting the plaintiff's symptom testimony due to the plaintiff's "tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations"); *Ray E. v. Kijakazi*, 2021 WL 7185092, at *10 (E.D. Wash. Dec. 7, 2021) (concluding that the ALJ did not err in discounting the plaintiff's testimony due to the plaintiff's inconsistent statements about his symptoms). Here, the ALJ's reliance on several reports that Plaintiff demonstrated inconsistent abilities during his physical exams was a clear and convincing reason supported by substantial evidence to reject his symptom testimony about his physical impairments.[2]

In Dr. Kim Webster's evaluation of Plaintiff, she noted there was "a great deal of pain behavior, some inconsistencies, and poor effort." AR 1223. Dr. Webster reported that Plaintiff heavily relied on a cane, but that by the end of her exam, she believed he did not need it. AR 1224. During the exam, Plaintiff would not stand independently on either leg or walk heel to toe, but later in the exam, Dr. Webster noted that Plaintiff fell and "caught himself quite dramatically and adroitly indicating that he actually had fairly good balance and strength." AR 1224. Dr. Webster also noted that Plaintiff presented as only being able to bend five degrees

---

[2] Plaintiff also argues that the ALJ rejected his symptom testimony about his mental impairments, citing AR 23-24. On the Court's reading of the ALJ's decision, however, the ALJ did not reject any symptom testimony about Plaintiff's mental impairments but rather explained why Plaintiff's RFC would not interfere with any of his limitations due to PTSD.

bilaterally, but "when he was taking off his jacket and moving around in other ways, he could side bend quite easily." AR 1224. Dr. Webster also noted that Plaintiff presented as being limited to a shoulder abduction of 45 degrees, but when she "asked him to hold out his arms to try to walk heel-to-toe, he actually held out his arms to 90 degrees quite quickly before declining to walk heel-to-toe." AR 1225. Further, Dr. Webster noted that Plaintiff presented an 80 degree bilateral shoulder flexion, but when "removing his jacket, he was able to flex them to at least 110." AR 1225. Dr. Webster included additional inconsistencies and signs of exaggeration with respect to Plaintiff's arm abduction, knee flexion, hip flexion, and straight leg raising. AR 1225. Dr. Webster concluded that she could not adequately examine Plaintiff's trochanters pain, left knee pain, left shoulder pain, and right shoulder pain due to Plaintiff's "pain behavior" during the exam. AR 1227.

Dr. James Harris reached similar findings. Dr. Harris noted that Plaintiff presented a 12 and 14 degree right and left hip abduction but then later demonstrated a 45 degree hip abduction. AR 705. Plaintiff presented a 50 and 54 right and left knee range of motion, which then later conflicted with his demonstrated 90-degree knee flexion. AR 704. Dr. Harris also reported Plaintiff's "inconsistent and prominent giveway weakness during strength testing." AR 705. Dr. Harris noted that these inconsistencies "appear to be self-limited and sub-maximal" and that due to "these inconsistencies and lack of correlation with previously documented range of motion measurements, today's examination is not felt to be valid for the purpose of rating permanent impairment." AR 704-05.

Dr. Paul Tesar found similar signs of unreliability. His examination of Plaintiff revealed "multiple nonorganic findings on physical examination with positive Waddell's and positive Marxer's tests." AR 609. Dr. Tesar noted that Plaintiff presented with only a 46 degree hip

PAGE 10 – OPINION AND ORDER

flexion, but "when doing muscle strength testing . . . he could flex both hips to at least 100 to 105 degrees against resistance." AR 608. Dr. Tesar also noted that Plaintiff presented a range of motion of his knees of 0 to 63, but "when sitting on the edge of the table his ranges of motion were at least 0 to 95 to 100 degrees." AR 609. Dr. Tesar also noted Plaintiff's "give-way weakness on muscle strength testing on his lower extremities." AR 609. Dr. Tesar concluded that "[c]onsidering all these nonorganic findings and inconsistencies on examination, [Plaintiff's] ranges of motion are not reliable for rating purposes." AR 609.

Further, Dr. James Schwartz noted that during his examination, Plaintiff exhibited "a significant amount of nonphysiologic pain behavior." AR 413. As with other physicians' findings, Dr. Schwartz noted that he did not consider his range of motion measurements valid given Plaintiff's "nonphysiologic findings." AR 414.

In this instance, the ALJ's determination that Plaintiff had exhibited inconsistent effort and inconsistent abilities during his physical exams is supported by substantial evidence in the record and is a valid reason to discount Plaintiff's credibility. Thus, the ALJ did not err by discounting Plaintiff's symptom testimony. Because the ALJ properly discounted Plaintiff's symptom testimony based on this reason, the Court need not address Plaintiff's other arguments of alleged error. *See Batson*, 359 F.3d at 1197; *Terrey v. Berryhill*, 696 F. App'x 831, 833 (9th Cir. 2017) ("Having concluded that the ALJ permissibly discounted Terrey's subjective symptom testimony on the basis of his work experience at Blockbuster, we need not address Terrey's claims that the ALJ erroneously relied upon Terrey's medical evidence and daily activities as additional grounds for discounting his symptom testimony because any error would be harmless.").

PAGE 11 – OPINION AND ORDER

## C. Medical Opinion Evidence

Plaintiff argues that the ALJ improperly discounted the medical opinions of Drs. Berner, Webster, Lorber, and Kinzie. Because Plaintiff filed his application for benefits after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how the ALJ evaluates medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ primarily considers the "supportability and "consistency" of the opinions. *Id.* § 404.1520c(b)-(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence and the source's explanation for the opinion. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3). The Court must also continue to consider whether substantial evidence supports the ALJ's analysis. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

PAGE 12 – OPINION AND ORDER

Plaintiff contends that even under these new regulations, the ALJ must still provide specific and legitimate reasons supported by substantial evidence for discounting medical opinions because that standard is required under the statutory "substantial evidence" requirement and not the regulatory framework of the hierarchy of medical opinions. The Commissioner does not dispute that substantial evidence must support the ALJ's decision. The Commissioner argues that because the new regulations eliminate the hierarchy of medical opinions that existed under the old regulations, the case law setting different requirements to reject medical opinions based on that hierarchy (such as "specific and legitimate reasons" for contradicted examining physicians) is now inapposite.

>Another district court recently addressed this issue:

>>In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020) (unpublished opinion) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

*Terry B. v. Acting Comm'r of Soc. Sec.*, 2021 WL 6072708, at *2 (W.D. Wash. Dec. 23, 2021) (alterations and emphasis in original).

The new regulations require an ALJ to evaluate medical opinion evidence based primarily on consistency and supportability irrespective of whether a "treating," "examining," or "reviewing" source gave the opinion. That does not mean, however, that the ALJ does not need to provide specific and legitimate reasons for why the medical opinion is or is not consistent with or supported by the evidence. *See Carrie R. v. Comm'r*, 2022 WL 35777, at *4 (D. Or. Jan. 4, 2022) ("The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so. . . . In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." (citations omitted)). Until the Ninth Circuit provides further guidance on this issue, the Court agrees that the ALJ must still provide specific and legitimate reasons in analyzing medical opinions under the new regulations.[3]

### 1. Dr. Berner

Plaintiff includes a description of Dr. Berner's findings in the subsection of his opening brief that challenges the ALJ's review of medical opinions. Plaintiff, however, does not identify any argument as to why the ALJ improperly rejected Dr. Berner's opinion. Thus, Plaintiff has

---

[3] At this time, the Court expresses no opinion about the validity of the other standards for reviewing medical evidence previously established by the Ninth Circuit such as the "clear and convincing" standard for considering uncontradicted evidence by a treating physician.

waived any argument that the ALJ improperly rejected Dr. Berner's opinion. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (declining to consider any argument not made in the plaintiff's opening brief); *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief."); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992) ("Issues raised in a brief which are not supported by argument are deemed abandoned. . . . We will only review an issue not properly presented if our failure to do so would result in manifest injustice." (quoting *Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir.1988))).

In any event, even assuming Plaintiff properly raised the issue, substantial evidence supports the ALJ's conclusion that Dr. Berner's opinion is inconsistent with and not supported by the record. Dr. Berner's limitation of Plaintiff to light work conflicts with the following medical opinions: Dr. Schwartz's opinion that there is "no indication why [Plaintiff] could not return to regular work" and that Plaintiff should be released to work "without restriction" (AR 414-15); Dr. Lorber's opinion that Plaintiff is released to "regular work without restrictions" in March 2017 (AR 684); Dr. Tesar's opinion that Plaintiff is "released to work" with only squatting and kneeling restrictions (AR 611); Dr. Charles Petit's opinion that Plaintiff could "return to Full Duty work, sports, school or P.E." (AR 555); and the medical records included in Dr. Berner's report concluding that Plaintiff has "normal gait" (AR 84). Thus, the ALJ provided a specific and legitimate reason supported by substantial evidence to reject Dr. Berner's opinion. *See Bourcier v. Saul*, 856 F. App'x 687, 689 (9th Cir. 2021) ("Dr. Huddleston's opinion conflicts with her own treatment notes and treatment notes from other providers at the same medical facility."); *Barranco v. Barnhart*, 150 F. App'x 690, 691 (9th Cir. 2005) (concluding that the

ALJ did not err in discounting a medical opinion that conflicted with other medical opinions in the record).

### 2. Dr. Webster

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Webster because the ALJ failed to consider the consistency between Dr. Webster's opinion and Dr. Lorber's opinion. The fact that a medical opinion may be consistent with another opinion alone, however, does not preclude the ALJ from providing some other specific and legitimate reason for rejecting the opinion. Here, the ALJ found Dr. Webster's opinion not persuasive because Dr. Webster's own findings, as discussed above, document extensive inconsistencies and pain behavior, particularly with respect to Plaintiff's left knee. *See* AR 1221-27. Dr. Webster concluded that she could "not adequately examine the left knee because of pain behavior and [Plaintiff's] refusal to flex his knee beyond 20 to 30 degrees while supine." AR 1227. Thus Dr. Webster's later conclusion that due to Plaintiff's left knee pain, Dr. Webster "would limit lifting and carrying to 20 pounds occasionally and 10 pounds frequently" is not supported by her medical records. AR 1227. The ALJ therefore provided a specific and legitimate reason to discount Dr. Webster's opinion. *See Gerard v. Astrue*, 406 F. App'x 229, 232 (9th Cir. 2010) ("[T]he ALJ properly discounted Hurd's evaluation because Hurd disclaimed any ability to assess Gerard's physical condition due to Gerard's pain behaviors and self-limiting behaviors."); *Magana-Scott v. Colvin*, 2014 WL 1901159, at *6 (E.D. Wash. May 13, 2014) (concluding the ALJ properly discounted a medical opinion that was based on an examination that documented Waddell signs and symptom exaggeration); *Miglioretto v. Comm'r Soc. Sec. Admin.*, 2013 WL 4876022, at *9 (D. Or. Sept. 11, 2013) (concluding that the plaintiff's exaggerated pain behavior during a physician's exam was a clear and convincing reason to reject that physician's opinion); *Hunt v. Colvin*, 2013 WL 4874460, at *4 (D. Ariz. Sept. 12, 2013) (concluding that the ALJ properly discounted a

medical opinion based the physician's examination of the plaintiff showing exaggerated responses and pain behavior).

### 3. Dr. Lorber

The ALJ found Dr. Lorber's opinion not persuasive only to the extent that it was based on Plaintiff's subjective limitations and was vague. AR 26. Dr. Lorber opined that "there were really no objective physical limitations in regard to the industrial injury" and that those limitations "were subjective." AR 755. Because the ALJ properly discounted Plaintiff's symptom testimony, the ALJ's proffered reason for discounting that portion of Dr. Lorber's opinion was specific and legitimate and supported by substantial evidence. *See Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (concluding that the ALJ properly discounted a medical opinion that relied on the plaintiff's self-reported symptoms when the ALJ had also properly discounted the plaintiff's symptom testimony).

The ALJ also rejected Dr. Lorber's opinion that Plaintiff's disc degenerative disease "can result in limitations in lifting as well as positional activities" because it was too vague to determine the "extent of limitation and positional activities." AR 26. Dr. Lorber's statement does not offer any functional limitation or assessments of functional capacity but is instead a vague and nonspecific suggestion that the ALJ was not required to accept. *See Ford v. Saul*, 950 F.3d 1141, 1156 (concluding that the ALJ properly discounted a medical opinion that "failed to specify [the plaintiff's] functional limits . . . [and] were inadequate to determining RFC"); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (noting that when a doctor's observation is a recommendation, it is "neither a diagnosis nor statement of [the claimant's] functional capacity" and an ALJ "[does] not err by excluding it from the RFC"). The ALJ therefore provided specific and legitimate reasons to reject those portions of Dr. Lorber's opinion.

### 4. Dr. Kinzie

Plaintiff argues that the ALJ improperly rejected Dr. Kinzie's assessment of Plaintiff's psychological limitations. The ALJ found Dr. Kinzie's opinion not persuasive because his treatment notes did not offer any objective explanation for his check-the-box conclusions about Plaintiff's memory, concentration, social interaction, and adaptation. AR 28. Dr. Kinzie opined that Plaintiff has "marked limitations" in the ability to remember and understand very short and simple instructions, the ability to maintain attention and concentration, the ability to set goals or make plans independently of others, and the ability to sustain an ordinary routine, among other areas. AR 1289. Dr. Kinzie's treatment notes explain that Plaintiff has PTSD resulting from his experiences during the Bosnian War and a work-related injury he suffered in 2015 after he moved to the United States. AR 1291-92. Dr. Kinzie's treatment notes do not, however, explain how Plaintiff's PTSD causes the "marked" limitations described above. Moreover, Dr. Kinzie's later treatment notes document significant psychological improvement. *See* AR 1293 (noting that Plaintiff was "much better" and "markedly better," that his thoughts were "logical and goal directed," and has "good insight"). Thus, the ALJ provided a specific and legitimate reason supported by substantial evidence to reject Dr. Kinzie's opinion. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, 'the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.'" (citation omitted) (quoting *Molina*, 674 F.3d at 1111)).

### D.  Step-Five Finding

First, Plaintiff argues that if the ALJ had properly credited the opinions of Drs. Berner, Webster, and Lorber, Plaintiff would be required to be found disabled under the Medical-Vocational Guidelines. Because the Court concludes that the ALJ provide adequate reasons to

reject the opinions of Drs. Berner, Webster, and Lorber, the Court need not address this argument.

Plaintiff also argues that the jobs available to Plaintiff identified by the Vocational Expert (VE) conflict with his RFC limitation of occasional stooping. Plaintiff contends that because comparable jobs listed in the Occupational Information Network (O*Net) require "flexibility," that those jobs conflict with his RFC. The VE, however, consulted the job descriptions in the Dictionary of Occupational Titles, which do not conflict with Plaintiff's RFC. Plaintiff did not challenge the VE's qualifications or otherwise raise any issue related to the O*Net data before the ALJ or Appeals Council. Thus, the VE's testimony provided the ALJ with substantial evidence to support the step five finding. *See Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021) (rejecting the plaintiff's argument that the ALJ's step five finding conflicted with O*Net data and stating that the VE's opinion "was supported by her unchallenged expertise and her reference to the [DOT]" and therefore "constituted substantial evidence in support of the ALJ's finding that [the plaintiff] could perform jobs existing in significant numbers in the national economy"); *Nguyen v. Colvin*, 2014 WL 2207058, at *3 (C.D. Cal. May 28, 2014) ("[I]n this instance, as noted by the ALJ, the VE evaluated Plaintiff's past relevant work using the DOT. Thus, it is immaterial whether Plaintiff's RFC is compatible with the requirements of her past relevant work as determined by O*NET because the VE did not consult that source.").

Finally, Plaintiff argues that the ALJ's reliance on the VE's testimony for the number of jobs available lacks support because the VE could not supply the number of "non-verbal" jobs available to Plaintiff. Plaintiff, however, does not challenge the ALJ's finding that Plaintiff can communicate in English. Further, substantial evidence supports that conclusion. *See* AR 742 (Dr. Lorber's report stating that Plaintiff "does fine communicating" in English); AR 824

PAGE 19 – OPINION AND ORDER

(Dr. Lorber's report stating that Plaintiff "does understand English"); AR 1305 (Dr. Kinzie's report stating that Plaintiff "is an amiable man who is quite articulate both in English and in Bosnia[n]"); AR 1335 (Dr. Kinzie's report stating that Plaintiff was speaking English "all the time"). Thus, the ALJ did not err by finding that there are a significant number of jobs available to Plaintiff in the national economy.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge